UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 18-20072-1 |
| Plaintiff, | SENIOR U.S. DISTRICT JUDGE ARTHUR J. TARNOW |
| v. | |
| HENRY ADOLFO SOTO, | U.S. MAGISTRATE JUDGE ANTHONY P. PATTI |
| Defendant. | |
| _____/ | |

**ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE [97]**

On October 26, 2020, Henry Adolfo Soto filed a *pro se* Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) [92]. (ECF No. 92). On January 13, 2021, this Court appointed the Federal Community Defender to represent Soto and ordered both parties to file records of Soto's medical conditions, re-entry plan, and BOP records with their briefs. (ECF No. 93). Subsequently, Soto, through counsel, filed an Amended Motion for Compassionate Release [97]. (ECF No. 97). On January 29, 2021, the Government filed a Response [98]. (ECF No. 98). On February 2, 2021, Soto filed a Reply [102]. (ECF No. 102). On February 9, 2021, the Court held a hearing on Soto's Motion [97]. For the reasons stated on the record and outlined below, the Court **GRANTS** Soto's Amended Motion for Compassionate Release [97].

1

## BACKGROUND

On February 5, 1975, Soto was born in Chicago, Illinois. (PSR ¶ 39). He does not know his father. (*Id.*). He has two maternal siblings who live outside Illinois. (*Id.*). His mother could not take care of him when he was a baby so at age one-and-a-half he moved to Guatemala to live with his maternal great-grandmother. (*Id.*). He did not see his mother while in Guatemala. (*Id.*). At age eight, Soto moved back to the United States and lived with his mother and stepfather in New Jersey. (*Id.*). At age 15, Soto and his family moved back to Chicago, Illinois. (*Id.*). Soto reported having an "ok" relationship with his stepfather. (*Id.*). His mother and stepfather divorced in 2009. (*Id.*). He did not graduate from high school or obtain his GED. (*Id.* ¶¶ 47-48). In his mid-twenties, Soto moved to Las Vegas, Nevada, for four years. (*Id.* ¶ 40). After that, he returned to Chicago to live with his family. (*Id.*). Around age 32, Soto moved back to Guatemala to care for his sick maternal grandmother. (*Id.*). At age 38, upon her passing, he returned to Chicago. (*Id.*). Soto reported no child abuse growing up and having a good relationship with his mother. (*Id.* ¶¶ 39-41). Despite his offense, his family is supportive. (*Id.* ¶ 41). He has never been married nor does he have children. (*Id.*) Before his conviction, he lived with his maternal aunt, cousin, and mother, in Chicago. (*Id.* ¶ 42). He is currently 46 years old. (ECF No. 97).

Soto's criminal history is limited to his current charge and a previous charge of possessing marijuana. (PSR ¶¶ 1, 33). While living in Las Vegas, at age 19, Soto was arrested for receiving an airborne delivery of approximately 25 pounds of marijuana from El Paso, Texas. (*Id.* ¶ 33). The 8th Judicial District Court in Las Vegas sentenced him to 18 months of probation, which he did not comply with and was dishonorably discharged. (*Id.*).

His current charge is for Possession with Intent to Distribute Heroin, specifically two kilograms, in violation of 21 U.S.C. §§ 841 and 841(b)(1)(A)(i). (*Id.* ¶ 17). On January 22, 2018, Soto and a DEA Confidential Source (CS) arranged to meet at Motor City Casino in Detroit to facilitate the transaction of 2.5 kilograms of heroin for a price of $62,000 per kilogram. (*Id.* ¶ 10). The next day, law enforcement conducted a traffic stop of Soto's car for excessive window tint on the front passenger windows and for suspicion of traveling to Detroit to coordinate the delivery of 2.5 kilograms of heroin. (*Id.* ¶ 13). The police found five cell phones, one of which had been used to contact Mohamed Belakhdhard (a former co-defendant in this case). (*Id.*). No narcotics were found in the car and Soto was sent on his way. (*Id.*). Upon a second search of Belakhdhard's vehicle, United States Border Patrol found two bricks of heroin. (*Id.* ¶¶ 14-16). The case against Belakhdhard was later dismissed without prejudice. (ECF No. 86).

Soto was arrested on September 6, 2018 and released on bond five days later.

3

(PSR ¶¶ 2-3). Soto began serving his 27-month sentence at USP Thomson after his sentencing hearing on January 28, 2020. *Find an Inmate*, FED. BUREAU PRISONS, https://www.bop.gov/mobile/find_inmate/index.jsp (BOP Register No. 53377-424) (last visited Feb. 5, 2021). He is set to be released on February 16, 2022. (*Id.*).

## ANALYSIS

### I. EXHAUSTION

A petitioner must exhaust his administrative remedies before moving for compassionate release under 18 U.S.C. § 3582(c)(1). (*United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020)). The Government confirmed Soto has exhausted his administrative remedies. (ECF No. 98, PageID.508). On June 25, 2020, Soto requested compassionate release from USP Thomson's warden, citing his medical concerns of obesity and tuberculosis, and the impact these conditions could have on his health if he contracted COVID-19. (ECF No. 97-3, PageID.490). On July 25, 2020, the warden denied Soto's request. (ECF No. 97-2, PageID. 492). Soto has satisfied the requirement to wait 30 days after receipt of his request from the warden before filing a motion for compassionate release with this Court. Since Soto has exhausted his administrative remedies, the Court must proceed to review his motion by the following three steps:

> At step one, a court must "find[]" whether "extraordinary and compelling reasons warrant" a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). At step two, a court must "find[]" whether

4

> "such a reduction is consistent with *applicable* policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A) (emphasis added). At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." [*Dillon v. United States*, 560 U.S. 817, 827 (2010).]

*United States v. Jones*, No. 20-3701, 980 F.3d 1098, 1107-08 (6th Cir. 2020) (first four alterations in original) (footnotes omitted).

## II.   EXTRAORDINARY AND COMPELLING REASONS

The Government admits that Soto's medical condition is an extraordinary and compelling reason for release. (ECF No. 98, PageID.517). This Court also has broad discretion in determining what are "extraordinary and compelling reasons" for granting a motion for compassionate release. *United States v. Elias*, 984 F.3d 516, at *519 (6th Cir. Jan. 6, 2021) (citing *Jones*, 980 F.3d at 1111; *United States v. Ruffin*, 978 F.3d 1000, 1007 (2020)). By having obesity, latent tuberculosis, and pre-diabetes, Soto is at an increased risk for contracting COVID-19 and suffering severe illness or even death as a result. *See People of Any Age with Underlying Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html [https://perma.cc/WT36H2VQ] (last updated Feb. 3, 2021). Since he lives within the prison system his risk is increased even further.

Soto's body mass index (BMI) fluctuates between 50 and 59. (ECF No. 101-

5

2, PageID.563). According to the CDC, a BMI of 40 or higher puts a person in the highest category of obesity, which is considered "extreme" or "severe." *See Defining Adult Obesity*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/obesity/adult/defining.html [https://perma.cc/YZ6H-P9AG] (last visited Jan. 29, 2021). Obesity causes serious complications for people infected with COVID-19. *See Obesity and COVID-19*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/obesity/data/obesity-and-covid-19.html [https://perma.cc/5UAL-LFMS] (last visited Feb. 5, 2021). These include "impaired immune function [,] . . . decreases [in] lung capacity" and a "triple[d]" risk of hospitalization. (*Id.*). Studies have even shown that "obesity may be linked to lower vaccine responses for numerous diseases." (*Id.*).

In addition, Soto has latent tuberculosis (TB). (ECF No. 97, PageID.475). A person with latent TB, a disease that affects the lungs, has been infected by the TB bacteria but it is inactive. NAT'L CTR. FOR HIV/AIDS, VIRAL HEPATITIS, STD, & TB PREVENTION, TB ELIMINATION: THE DIFFERENCE BETWEEN LATENT TB INFECTION AND TB DISEASE 1 (2011), https://www.cdc.gov/tb/publications/factsheets/general/LTBIandActiveTB.pdf [https://perma.cc/T2A8-JAWV]. Soto was treated for TB from June to August 2020 and was experiencing breathing abnormalities. (ECF No. 101-2, PageID.650-49, 658, 665). Soto's latent TB could increase his risk of contracting COVID-19 and

experiencing more severe symptoms. *See* Yongyu Liu et al., *Active or latent tuberculosis increases susceptibility to COVID-19 and disease severity*, MEDRXIV (Mar. 16, 2020), https://www.medrxiv.org/content/10.1101/2020.03.10.20033795v1 [https://perma.cc/8QQK-D4RW]. Courts have also found that latent TB increases a person's risk of severe illness from COVID-19 and "may be a particularly dangerous condition to have in a prison, given that COVID-19 also targets the lungs." *United States v. Watkins*, No. 15-20333, 2020 U.S. Dist. LEXIS 124937, at *6 (E.D. Mich. July 16, 2020); *see also United States v. Greene*, No. 15-20709, 2020 U.S. Dist. LEXIS 142007, at *2-3 (E.D. Mich. Aug. 10, 2020); *see also* Padma Nagappan, *COVID-19 Could Activate Latent Tuberculosis*, SDSU NEWSCENTER (Sept. 22, 2020), https://newscenter.sdsu.edu/sdsu_newscenter/news_story.aspx?sid=78173 [https://perma.cc/S2J7-ZHZL].

Soto also has pre-diabetes. (ECF No. 101-2, PageID.563). In July 2020, he had an A1c reading of 5.7. (*Id.*). A reading within the range of 5.7 to 6.4 puts Soto in the high-risk category for developing diabetes. Mayo Clinic, *A1C Test Description*, https://www.mayoclinic.org/tests-procedures/a1c-test/about/pac-20384643 [https://perma.cc/T4CA-KH7N] (last visited Feb. 11, 2021). Diabetics are especially vulnerable to serious illness or risk of death from getting COVID-19. CTRS. FOR DISEASE CONTROL & PREVENTION, *At Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-

7

higher-risk.html [https://perma.cc/4VJS-W99E] (last visited Feb. 11, 2021). Furthermore, those in the medical community are taking notice of a connection between pre-diabetes and COVID-19 outcomes. *See* Aubrey Sosibo & Andile Khathi, Commentary, *Pre-diabetes and COVID-19, could we be missing the silent killer?*, EXPERIMENTAL BIOLOGY AND MEDICINE (Nov. 20, 2020), https://journals.sagepub.com/doi/full/10.1177/1535370220973451 [https://perma.cc/ZF4W-47NA] (explaining that several "biochemical markers . . . suggest that pre-diabetes could be a silent-killer in the fight against COVID-19 as it is not traditionally viewed as comorbidity."). Studies also show that having a higher glucose level indicates a higher risk of morality from COVID-19 compared to individuals with normal glucose. *See* Thirunavukkarasu Sathish et al., *Preexisting prediabetes and the severity of COVID-19*, 15 PRIMARY CARE DIABETES 28-29 (2021), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7480529/ [https://perma.cc/SL6V-BAGV] (last visited Feb. 5, 2021). It is reasonable to assess that Soto's pre-diabetes puts him at greater risk for having complications if he gets COVID-19.

Soto's age also impacts his likelihood of hospitalization or death if he contracts COVID-19. Soto is 46 years old. A person in the age range of 40-49, like Soto, is three times more likely to be hospitalized and ten times more likely to die from COVID-19 than someone who is in the age range of 18 to 29 years old. *See*

*Older Adults*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html [https://perma.cc/6UX3-2QU6] (last updated Dec. 13, 2020).

Furthermore, the Court has serious concern for Soto's health and safety in USP Thomson. 609 inmates and staff at USP Thomson have contracted and recovered from COVID-19, while sixteen currently have the virus. *COVID-19 Cases*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ [https://perma.cc/92MV-99PP] (last visited February 12, 2021). The prison currently houses 1,347 inmates, placing its COVID-19 positive rate at approximately 39%. *USP Thomson*, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/tom/ [https://perma.cc/C3GM-LQVV] (last visited February 12, 2021). Although the vaccine is now available to some BOP facilities, doses are first being offered to full time staff and only the remaining doses are provided to inmates based on priority of need. *COVID-19 Cases*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ [https://perma.cc/92MV-99PP] (last visited February 12, 2021). USP Thomson has not administered any vaccinations to its staff and inmate population. *Id.* Therefore, based on Soto's age, medical conditions, and his heightened risk of contracting COVID-19 in prison, the Court finds that there are extraordinary and compelling reasons for his release.

9

## III. § 3553(A) Factors

Next, the Court must determine whether the 18 U.S.C. § 3553(a) factors warrant a sentence reduction. "[T]he deferential abuse-of-discretion standard requires district courts to supply specific factual reasons for their compassionate release decisions." *Jones*, 980 F.3d at 1101-02. However, "'as long as the record as a whole demonstrates that the pertinent factors were taken into account by the district court[,]' a district judge need not 'specifically articulat[e]' its analysis of every single § 3553(a) factor." *Id.* at 1114 (quoting *United States v. Curry*, 606 F.3d 323, 330 (6th Cir. 2010)). The § 3553(a) factors are as follows:

> **(a) Factors to be considered in imposing a sentence.**--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed—
> > **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > **(B)** to afford adequate deterrence to criminal conduct;
> > **(C)** to protect the public from further crimes of the defendant; and
> > **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> **(3)** the kinds of sentences available;
> **(4)** the kinds of sentence and the sentencing range established for--
> > **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
> > [. . .]
>
> **(5)** any pertinent policy statement—
> [. . .]
> **(6)** the need to avoid unwarranted sentence disparities among defendants

10

> with similar records who have been found guilty of similar conduct; and
> **(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553.

BOP determined Soto has a low recidivism risk. (ECF No. 97-5, PageID.496). He has served almost half of his sentence and he is scheduled for release in February 2022. (*Id.* at 468). His prior criminal history is sparse, having only one charge for possession of marijuana in 1995 (at the age of 19). (PSR. ¶ 33). While in prison Soto has worked on improving himself through starting to obtain his GED and taking several courses including money basics, fresh start employment, and recovery and change. (ECF No. 97-6, PageID.498). Soto has a clean disciplinary record. (ECF No. 97-7, PageID.500). He has also worked in food service at the BOP working 12-hour days. (ECF No. 101-2, PageID.579). These facts show that Soto has made good use of his time while in prison, despite only having been there one year.

Soto's sentence includes three years of supervised release. During the hearing on his motion, Soto confirmed that he can obtain a job upon release. His past employment record bolsters this statement, because it shows he has held and maintained employment. (PSR ¶¶ 49-51). Soto had an active business from 2015 to 2019 cleaning buildings. (*Id.* ¶51). He has also worked as a stocker, cook, valet attendant, and manager of a grocery store. (*Id.* ¶ 49). Upon release, Soto will live at his aunt's house where he lived before incarceration. (PSR ¶ 42). His aunt has owned her home for many years. (*Id.*) Soto's offense, when viewed in light of his

background and what he has done to improve himself during his short time in prison, lends credence to the conclusion that he has taken steps to show respect for the law, reduce his chances of recidivism, and will be less of a threat to the community. Accordingly, the Court finds that the § 3553(a) factors warrant a sentence reduction to time served.

## CONCLUSION

**IT IS ORDERED** that Soto's Motion for Compassionate Release [97] is **GRANTED** and that his sentence is reduced to time served.

**IT IS FURTHER ORDERED** that Soto be **IMMEDIATELY RELEASED** to begin his three-year term of **SUPERVISED RELEASE**, as outlined by the January 28, 2020 Judgment (ECF No. 91, PageID.436-38), including the following additional Special Condition:

> **The defendant must participate in a substance abuse treatment program and follow the rules and regulations of that program. The probation officer in consultation with the treatment provider, will supervise his participation in the program (provider, location, modality, duration, intensity, etc.), if necessary.**

**SO ORDERED**.

Dated: February 24, 2021

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge